Filed 5/16/22  P. v. Sanders CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DARREN SANDERS,<br><br>    Defendant and Appellant. | H047960<br>(Santa Clara County<br>Super. Ct. No. C1882113) |

A jury found defendant Darren Sanders guilty of first degree burglary and misdemeanor resisting an officer.  The trial court sentenced Sanders to 17 years in prison, including an upper term of six years (doubled, due to a prior strike conviction) for the burglary and a consecutive five-year sentence enhancement for a prior serious felony conviction.

On appeal, Sanders contends that recent amendments to Penal Code section 1170 apply retroactively to his case and, thus, we should vacate his sentence and remand for a new sentencing hearing consistent with current law.  The Attorney General counters that remand is unnecessary because the record makes clear the trial court will not reduce Sanders's sentence any further than it did at his original sentencing.

For the reasons explained below, we vacate Sanders's sentence and remand the matter for resentencing.  Sanders's convictions are affirmed.

# I. FACTS AND PROCEDURAL BACKGROUND

In September 2018, the Santa Clara County District Attorney filed an information charging Sanders with first degree burglary for entering an inhabited dwelling house with intent to commit theft (Pen. Code, § 460, subd. (a)[1]; count 1) and misdemeanor resisting, delaying, or obstructing an officer (§ 148, subd. (a)(1); count 2). As to count 1, the information alleged that another person not an accomplice was present in the residence during the burglary (person-present violent felony allegation) (§ 667.5, subd. (c)(21)). The information further alleged that Sanders had suffered three prior strike convictions for residential burglary (strike prior) (§§ 667, subds. (b)-(i), 1170.12) and two prior serious felony convictions (serious felony prior) (§ 667, subd. (a)), and had served two prior prison terms (prison prior) (§ 667.5, subd. (b)) (collectively, prior conviction allegations).

A jury heard evidence on the charges. Because the issues raised in this appeal do not challenge the convictions, we only briefly describe the evidence presented at the trial.

On the night of January 19, 2018, a resident and some friends (all of whom were college students) entered the resident's house and encountered an intruder. A second resident was asleep in the house at the time. The intruder ran from the house. The residents discovered that money was missing (between about $20 and $40). Police spotted Sanders nearby. He fled despite their commands to stop. After a brief chase, police apprehended Sanders. The resident and two of his friends who had seen the intruder identified Sanders as the person who had run from the house.

Additionally, the prosecution presented evidence of similar misconduct committed by Sanders on three occasions in September 1997, also victimizing homes inhabited by college students. The parties stipulated that the first prior incident "involved possibl[e] theft," but "there is no conviction in that alleged incident." Regarding the second and

---

[1] Unspecified statutory references are to the Penal Code.

third prior incidents, the parties stipulated that for each incident Sanders had been convicted on January 11, 1999, of first degree burglary for entering an inhabited dwelling house with the intent to commit theft.

In his defense, Sanders presented testimony by an expert on eyewitness memory and identification. He also presented evidence concerning a surveillance video recorded at a nearby convenience store on the night of the charged offense.[2]

The jury convicted Sanders as charged and found true the person-present violent felony allegation.

In a separate court trial on the prior conviction allegations, the prosecution presented certified conviction records from two prior cases (Santa Clara County Superior Court Nos. 171499 & 203338) and a certified copy of Sanders's "rap sheet." The trial court reviewed the documents and found that "all priors are true." Further, Sanders admitted to having been convicted of the prior crimes. Based on the admission, the court found Sanders "guilty beyond a reasonable doubt."

In a sentencing memorandum, the district attorney urged the trial court to follow the probation department's sentencing recommendation and impose a 10-year term consecutive to 25 years to life in prison.

Sanders's trial counsel filed a sentencing brief and request for dismissal of the strike priors pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). Counsel noted that Sanders was then 44 years old and had "battled drug and alcohol addiction from a young age. From age 10 until age 20 he used marij[u]ana. At age 13, he started experimenting with phencyclidine. At age 15, he used LSD for 3 years. And he used crack cocaine on a daily basis in his early twenties."

The probation department's report indicated that, on the night of the charged offense, Sanders had a 0.05 percent blood alcohol content and no illegal substances in his

---

[2] According to a defense offer of proof at trial, the video depicts someone who was wearing clothing that matched the perpetrator's clothing, as described by witnesses.

blood.  The report also noted Sanders's statement that he "heard voices in his head from 'time to time' and was diagnosed with an unspecified disorder in 2017 or 2018."  Sanders further said that "[i]n 2009, he was taking medication for such [voices], however, he ceased taking medication as he 'didn't want to be bothered.' "  Additionally, Sanders told probation that he "stopped attending school in the eighth grade as he 'kept getting locked up,' but obtained his GED in 2017."

On February 21, 2020, the trial court held a sentencing hearing.  The court granted Sanders's *Romero* motion, striking two of the three strike priors.  The court provided several reasons for its decision.  The court noted that, although Sanders was still on parole at the time of the current offense, the strike priors had occurred over 20 years ago, the amount of money taken during the current burglary was less than $50, and Sanders had "some mental health and alcohol and substance abuse issues, which were largely unopposed by the People."  The court explained that it "took into account the rather difficult childhood . . . that Mr. Sanders had, including the use of PCP at a very early age [which] affects a person's ability to make good choices."  The court also took into account that no weapon was used during the charged offense, no one was hurt, neither victim was seeking restitution, "[o]ne victim had no input on sentencing, and the other said this is why the Three Strikes law exists."  Although the trial court concluded that "the circumstances of the current crime do fall outside the spirit of the Three Strikes law" and a life sentence is inappropriate, the court stated it did not "want any message received by anyone . . . that this crime was okay" and further expressed that "the circumstances of this crime are actually very uncomfortable and very disconcerting."

Additionally, the trial court exercised its discretion under section 1385 and struck the punishment for one of the two five-year serious felony prior enhancements.  The court explained that it had "considered in terms of striking that prior Mr. Sanders'[s] mental health history, as well as his substance abuse issues."  The court also struck the

4

two prison priors due to a change in the law.  (See Stats. 2019, ch. 590, § 1 [Senate Bill No. 136].)

The trial court imposed an aggregate sentence of 17 years in prison, comprising the upper term of six years, doubled to 12 years, for the burglary conviction (count 1) and a consecutive five-year enhancement for the serious felony prior (§ 667, subd. (a)).  In making its sentencing decision, the court said it weighed the fact that Sanders was a "44-year-old who really just cannot find his way.  Cannot stay out of trouble.  Cannot accept responsibility for [his] actions, and who keeps harming the community."  When specifically explaining its imposition of the aggravated term, the court noted that Sanders was on parole at the time of the current offense, had engaged previously in similar conduct in the same geographic area, and that the current offense occurred four months after Sanders's release from prison.  The court added, "So quite candidly, from the Court's perspective, having you in a controlled environment means that the public doesn't have to deal with your choices for the period of time that you're going to be in prison."  The court also imposed a concurrent term of 180 days in the county jail for the misdemeanor resisting conviction (count 2), deemed served.

Sanders timely appealed.

## II.  DISCUSSION

Sanders contends that two recently enacted laws that amended section 1170, Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, §§ 1.3, 3) and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695, §§ 5.3, 6), apply retroactively to him and require us to vacate his sentence and remand for a new sentencing hearing.[3]  Sanders argues that he did not stipulate to the aggravating

---

[3] Three bills amending section 1170 were enacted and signed into law on the same date.  (See Stats. 2021, ch. 695, § 5 [Assembly Bill No. 124; eff. Jan. 1, 2022]; Stats. 2021, ch. 719, § 2 [Assembly Bill No. 1540; eff. Jan. 1, 2022]; Stats. 2021, ch. 731, § 1.3 [Senate Bill No. 567; eff. Jan. 1, 2022].)  Senate Bill No. 567—which takes precedence

circumstances and "should be allowed to present a statement in mitigation and new evidence" for the trial court to consider under current section 1170, subdivision (b) (section 1170(b)).  He asserts further that, under section 1170, subdivision (b)(6), he "should be allowed to present additional evidence about his difficult childhood and how that traumatic upbringing contributed to his criminal behavior that provides further weight to the presumptive mandate to impose the lower term."

Turning first to the new law, current section 1170, subdivision (b)(1) directs a trial court to impose not more than the middle term of a sentencing triad unless certain circumstances exist.[4]  The court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)  "Notwithstanding paragraphs (1) and (2) [of section 1170(b)], the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)  Under section 1170, subdivision (b)(5), the trial court must "set forth on the record the facts and reasons for choosing the sentence imposed.  The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."  (§ 1170, subd. (b)(5).)

because it was enacted last (see Gov. Code, § 9605; *In re Thierry S.* (1977) 19 Cal.3d 727, 738)—states that if all three bills amending section 1170 are enacted and become effective on or before January 1, 2022, and Senate Bill No. 567 is enacted last, then section 1.3 of that bill, which incorporates the amendments proposed by Senate Bill No. 567, Assembly Bill No. 124, and Assembly Bill No. 1540, shall become operative.  (Stats. 2021, ch. 731, § 3(c).)

[4] Section 1170, subdivision (b)(1) provides:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph[](2)."  (§ 1170, subd. (b)(1).)

Further, section 1170, subdivision (b)(6), provides in relevant part: "Notwithstanding paragraph (1) [of section 1170(b)], and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6).)

The Attorney General concedes that the recent legislative changes to section 1170(b) apply to Sanders. We agree. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902.)

Notwithstanding the applicability of current section 1170(b) to this case, the Attorney General contends that remand for resentencing is unnecessary because the trial court relied primarily on Sanders's criminal history when imposing the upper term, which is permissible under the former and current law. The Attorney General also asserts that, regardless of the new lower-term presumption based on previously experienced trauma provided for in section 1170, subdivision (b)(6), the record clearly indicates the court "would not sentence [Sanders] to anything less than the term it imposed."

Sanders disputes the Attorney General's assertion that the record provides a clear indication the trial court would have imposed the aggravated term under current law, urges us not to speculate about how the court would have exercised its new sentencing discretion, and asserts that "resentencing is required because the trial court must consider Sanders's traumatic childhood in light of the new law and its legislative intent."

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a

material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

We are persuaded that a remand for resentencing is appropriate under the present circumstances. We acknowledge that the trial court carefully and thoughtfully exercised its sentencing discretion, evincing a desire to promote public safety and ensure that Sanders's incarceration was proportionate to the seriousness of his offense. (See § 1170, subd. (a)(1).) When imposing the upper term, the court focused on Sanders's prior convictions and recidivism and candidly explained its perspective that incarceration of Sanders would protect the public from his bad choices.

That said, we are not convinced the record clearly indicates the trial court would have reached the same conclusions regarding the imposition of the upper term for the first degree burglary if it were imposing Sanders's sentence under current section 1170. The record suggests Sanders "has experienced psychological, physical, or childhood trauma" that "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(A).) As the trial court noted when striking the two strike priors and one serious felony prior, Sanders had a "rather difficult childhood" that included serious substance use and abuse from a young age. Sanders also had alcohol in his system on the night of the offense. In addition, Sanders suffered mental health problems that the court believed weighed in favor of striking his priors.

The Legislature's emphasis on the importance of a defendant's trauma history and the presumption against imposition of the upper term evinced by the new legislation could have had an effect on the trial court's decision to impose the upper term for Sanders's burglary conviction. Even if the court had been disinclined to impose the lower term, the new presumption might have persuaded it to impose the middle term of

8

four years, doubled. Given that the court was motivated under the prior sentencing law to give effect to Sanders's apparent trauma history, under the present circumstances, we conclude the record does not clearly indicate the court would have reached the same conclusion on Sanders's sentence under current section 1170(b). That the trial court already recognized and accounted for mitigating factors in Sanders's sentence does not necessarily preclude it from reassessing their importance in light of the new directives from the Legislature. Accordingly, we vacate Sanders's sentence and remand for resentencing. We express no opinion as to how the trial court should exercise its discretion on remand.

## III. DISPOSITION

The judgment is reversed, and the matter is remanded for resentencing under current sentencing law (see Pen. Code, § 1170). Sanders's convictions are affirmed. Following resentencing, the trial court is directed to prepare a new abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P.J.


_____
Lie, J.

**H047960**
*People v. Sanders*